Hedy MAJOR, individually and on behalf of her child, I. J. Major, Jr. and on behalf of all other persons similarly situated, Plaintiffs,

v.

Louis SOWERS, individually, and in his capacity as Director of Institutions, Department of Institutions; Dallas B. Mattews, individually, and in his capacity as Superintendent of the State Industrial School for Colored Youth; A. L. Swanson, individually and in his capacity as Superintendent of the Louisiana Training Institute; and Jack M. Pearce, individually and as Superintendent of the Louisiana State Industrial School for Girls, Defendants,

Honorables: Leo Blessing, James P. O'Connor, James Gulotta, Individually and in their capacity as judges of the Juvenile Court, Parish of Orleans, City of New Orleans, State of Louisiana, Defendants.

Civ. A. No. 69-543.

United States District Court
E. D. Louisiana,
New Orleans Division.
March 25, 1969.

Luke Fontana, New Orleans, for plaintiffs.

Harry H. Howard, Asst. Atty. Gen., for defendants.

RUBIN, District Judge:

In this class action, plaintiff, Hedy Major, seeks to eliminate segregation in the Louisiana state reform schools [1] and to declare the state statutes that require segregation at these institutions unconstitutional.[2] Plaintiff has requested appointment of a three judge court to hear the matter on its merits, but seeks immediate relief by means of a temporary restraining order. She urges that state courts be immediately enjoined from sentencing youthful offenders to one of the youth correctional institutions solely on the basis of race.

The fair administration of justice dictates that decisions be reached only after the court has fully heard and considered all the evidence. Only when it is clear that "irreparable damage will result" if temporary relief is not granted, may the court grant such relief before a full scale hearing is held. 28 U.S.C. § 2284(3).

A hearing to determine the right to temporary relief is not a determination of the merits of a claim,[3] but a party must present at least a prima facie case in order to be eligible for a

---

1. Louisiana presently operates three youth correctional institutions: All Negro juveniles are committed to the State Industrial School for Colored Youth at Baton Rouge; all white male juveniles are committed to the Louisiana Training Institute at Monroe; all white female juveniles are committed to the Lou- isiana State Industrial School for Girls at Pineville.

2. LSA–R.S. 15:911, 912, 972, 1011, 1012, 1031, 1032.

3. Indeed, the decision granting or denying temporary relief has no binding effect upon the court's ultimate consideration of

temporary restraining order. Chappell & Co. v. Frankel, 2 Cir., en banc, 1966, 367 F.2d 197, 202; Congress of Racial Equality v. Douglas, 5 Cir., 1963, 318 F.2d 95, 97. Segregated youth correctional facilities have been held unconstitutional in three recent cases,[4] and since the State itself conceded at the hearing that its youth institutions do not meet constitutional standards, this requirement has been readily met.

■ But, as its very name implies, a temporary restraining order is issued only for a short period, upon a showing of its necessity to prevent further injury until time permits an adequate hearing on the issuance of an injunction.[5] Ordinarily it is issued "to prevent a threatened wrong and to preserve the status quo until final hearing on the merits." Chicago B. & Q. R. Co. v. Chicago, Great Western R. Co., 8 Cir., 1951, 190 F.2d 361. See also, Ohio Oil Co. v. Conway, 1929, 279 U.S. 813, 49 S.Ct. 256, 73 L.Ed. 972; Hamilton Watch .Co. v. Benrus Watch Co., 2 Cir., 1953, 206 F.2d 738, 739.

■■ In a proper case, of course, a temporary restraining order may be issued to alter the status quo.[6] But certainly, in such a situation, "[t]he burden upon a plaintiff seeking a temporary injunction is even heavier where, as here, such relief would in effect grant plaintiff all or a good part of the relief to which it would be entitled after a trial on the merits." Hambros Bank Ltd. v. Meserole, S.D.N.Y.1968, 287 F.Supp. 69, 71. Selchow & Righter Co. v. Western Printing & Lithographing Co., 7 Cir., 1940, 112 F.2d 430, 431. In determining whether this burden has been carried, "there must be [an equitable] balancing of the possible injuries to [all concerned] according to how they may be affected by the granting or withholding of the [temporary restraining order]." Congress of Racial Equity v. Douglas, *supra,* at 97; Chappell & Co., v. Frankel, *supra,* at 202.

A cursory examination of the evidence introduced at the hearing [7] reveals that the institutions maintained for white and black juveniles are not only separate, they are also unequal. Louisiana spends $6.68 per capita per day on its white male youth, $10.66 per capita per day on its white female youth, and $4.43 per capita per day on its black youth (male and female).[8] State appropriations make clear the discrimination in budget; the discrimination in the character of the facilities is clear from the photographs in evidence.

---

the merits. Benson Hotel Corporation v. Woods, 8 Cir., 1948, 168 F.2d 694, 696–697.

4. *See* Board of Managers of Arkansas Training School for Boys v. George, 8 Cir., 1967, 377 F.2d 228; Washington v. Lee, (three judge court), M.D. Ala., 1966, 263 F.Supp. 327, aff'd, 1968, 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212; Singleton v. Board of Commissioners of State Institutions, 5 Cir., 1966, 356 F.2d 771. Cf. Johnson v. Virginia, 1963, 373 U.S. 61, 62, 83 S.Ct. 1053, 10 L.Ed.2d 195.

5. See generally, 7 Moore's Federal Practice ¶ 65.05, pp. 1642–43.

6. This may be a matter of semantics however. The status quo may be "a condition not of rest, but of action," and, in such a case, unless the court were to order defendant to take affirmative action, the status quo would not be preserved and irreparable injury might result. Toledo, A.A. & N.M. Ry. Co. v. Pennsylvania Co., C.C. N.D.Ohio, 1893, 54 F. 730.

7. The evidence at the hearing consisted of 76 photographs of the three institutions and official state financial statements and reports.

8. Two of the institutions appear to be seriously over-crowded: the State Industrial School for Colored Youth, both male and female, has 1000 juveniles in a facility designed for 582, and the Louisiana Training Institute for white male youth has 450 men in an institution whose official capacity is 325. The Louisiana State Industrial School for Girls where white female juveniles are committed has 132 girls in facilities designed for that number. (All of these figures are for 1968–69 and were computed from the Department of Institutions budget request. The figures for past years are substantially similar).

But the temporary relief plaintiff proposes might itself cause irreparable damage to children in the State's custody. Plaintiff urges the court immediately to order state judges to assign juveniles to correctional institutions without regard to their race. This would allow no time to restructure the rehabilitational program for the young people already at these institutions. If this relief were granted, a small number of Negroes might be precipitately committed to the overwhelmingly white institutions, and a few whites might be committed to the institution that presently includes only Negroes. While this would bring about some immediate token desegregation, neither permanent nor substantial desegregation would be accomplished, and grave harm might result to the young men and women thus hastily confined to an institution that is not prepared to receive them, and at which they would be in a small racial minority. The result of unplanned, hasty action on the young people directly affected by the temporary restraining order may be damage, both physical and emotional, that no court could later correct.

Temporary relief must "create or preserve a state of affairs such that [the court] will be able, upon conclusion of the full trial, to render a meaningful decision for either party." Chappell & Co. v. Frankel, supra, at 202.[9] The issuance of a temporary restraining order in this instance might well accomplish an opposite result.

A three judge court composed of Circuit Judge Ainsworth, District Judge West and myself has been appointed. The first issue before it will be the determination of the plaintiff's motion to rescind the appointment on the basis that there is no substantial constitutional question for its consideration.[10] If the court considers that the case is proper for a three judge court, it will proceed to determine what should be done. If it concludes that the case for unconstitutionality is so clear that no substantial constitutional question has been presented, it will enter an appropriate order.[11] In either event, the case can then move forward without delay. If the State is required to put its houses of correction in constitutional order, a program can be developed that promises a planned and permanent solution with the utmost protection for the young people who will be affected by it.

The motion for a temporary restraining order is therefore denied.

---

9. For further discussion, see Developments in the Law—Injunctions, 78 Harv.L.Rev. 994, 1056 (1965).

10. *See* Jackson v. Choate, 5 Cir., 1968, 404 F.2d 910.

11. In Board of Managers of Arkansas Training School for Boys v. George, *supra*, at 231, an identical case, the Eighth Circuit ruled that a three judge court was not required. *Cf.* Bailey v. Patterson, 1962, 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512.