No. 48,036

STEPHEN B. BURNETT, *Appellee,* v. ROSS O. DOYEN, member of the Kansas Senate, NORMAN E. GAAR, member of the Kansas Senate, JOSEPH C. HARDER, majority leader of the Kansas Senate, J. C. TILLOTSON, vice president of the Kansas Senate, ROBERT W. STOREY, member of the Kansas Senate *Appellants.*

(552 P. 2d 928)

Opinion filed July 23, 1976.

*Robert A. Coldsnow,* Kansas legislative counsel, of Topeka, argued the cause, and was on the brief for the appellants.

*E. Richard Brewster,* of Topeka, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is an appeal by Republican members of the Kansas Senate seeking to vacate the trial court's order restraining them from barring members of the public the right to attend the August 21, 1975, Republican Caucus.

The question sought to be resolved is whether the Kansas Open Meeting Law ( K. S. A. 1975 Supp. 75-4317, *et seq.* ) requires the Republican Caucus, called pursuant to K. S. A. 1975 Supp. 46-1601, (Repealed in part L. 1976, ch. 234) to be open to the public.

Stephen Burnett (plaintiff-appellee) is a newsman for a Topeka television station assigned to the statehouse as a reporter for news coverage. Ross O. Doyen, Norman E. Gaar, Joseph C. Harder,

J. C. Tillotson and Robert W. Storey are Republican members and officers of the Kansas Senate.

Pursuant to K. S. A. 1975 Supp. 46-1601 (a), et seq., the defendants-appellants were to meet in the evening on August 21, 1975, to nominate one or more members of the Kansas Senate for election to the position of President of the Kansas Senate to fill the vacancy created by the appointment of the Honorable Richard Rogers, former President of the Kansas Senate, to a federal district court judgeship. K. S. A. 1975 Supp. 46-1601 (a) provided:

"When a vacancy occurs in the office of president of the senate or speaker of the house of representatives and the legislature is adjourned to a date more than thirty (30) days after the occurrence of the vacancy, the house of representatives or senate, as the case may be, shall meet within thirty (30) days and elect a member thereof to fill the vacancy. The vice president of the senate or the speaker pro tem, as the case may be, shall within ten (10) days of such occurrence issue a call for such meeting at a time not less than ten (10) days and not more than twenty (20) days after the date of the call. *On the day preceding the date of the call the party caucuses of the house shall meet to choose their respective nominees.*" (Emphasis added.)

Legislative members attending the caucus were to receive compensation, expense allowances and mileage as provided by K. S. A. 1975 Supp. 46-1601 (d).

Burnett desired to attend and film part of the Republican Caucus. Based on comments by two of the five defendants and Burnett's inability to attend the 1974 Senate Republican Caucus during the preorganization meeting of the legislators, Burnett feared "irreparable injury" if he and other members of the public would be barred from the Republican Caucus. Joseph Harder, Majority Leader of the Kansas Senate, stated he intended to submit the question of whether the Republican Caucus meeting should be opened or closed to a vote at the caucus. Burnett claimed this violated his right to attend the meeting because the vote might result in the public being barred. Therefore, Burnett filed a petition for declaratory judgment on August 20, 1975, and a motion for temporary restraining order on August 21, 1975. He sought to have the Republican Caucus be declared subject to the Kansas Open Meeting Law (K. S. A. 1975 Supp. 75-4317, et seq.), a restraining order to insure access of the public to the meeting, and to further insure that ballots for the nomination were open and non-secret.

The public policy of the state with regard to open meetings is stated in K. S. A. 1975 Supp. 75-4317 as follows:

"(a) In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be the policy of this state that meetings for the conduct of governmental affairs and the transaction of governmental business be open to the public.

"(b) It is declared hereby to be against the public policy of this state for any such meeting to be adjourned to another time or place in order to subvert the policy of open public meetings as pronounced in subsection (a)."

K. S. A. 1975 Supp. 75-4318 (a) provides the following legislative guidelines:

"Except as otherwise provided by law, all meetings for the conduct of the affairs of, and the transaction of business by, all legislative and administrative bodies and agencies of the state and political and taxing subdivisions thereof, including boards, commissions, authorities, councils, committees, subcommittees and other subordinate groups thereof, receiving or expending and supported in whole or in part by public funds shall be open to the public and no binding action by such bodies shall be by secret ballot."

On the morning of August 21, 1975, the trial court, pressed for immediate action, first attempted to handle the motion for a temporary restraining order. The court stated three times it was not resolving the matter on the merits, but it heard evidence and said the Republican Caucus was a governmental affair within the Kansas Open Meeting Law which must be open to the public. The journal entry restrained the appellants from barring the public from the Republican Caucus and further restrained them from voting by secret ballot. A motion for an order staying the trial court's order pending appeal was denied. A request that the trial court set bond was also denied.

On the afternoon of August 21, 1975, Justice Fromme of this court issued an order staying the judgment of the trial court.

The Republican party caucus was held on the evening of August 21, 1975. Affidavits submitted by the five defendants indicated Senators Tillotson, Storey and Harder supported opening the meeting to the public and opposed voting by a secret ballot. Senators Doyen and Gaar took the opposite view. Because the defendants were merely five of a 26-member caucus, they did not have absolute control and power in matters of procedure that came before the meeting. The caucus was opened to the public by vote of its members.

Stephen Burnett and other members of the press went to the Republican Caucus where they observed the meeting was open to the public, and the votes cast upon the nominations made were by open ballot.

Since August 21, 1975, the law pertaining to party caucuses has been amended. What was formerly K. S. A. 1975 Supp. 46-1601 now reads:

"Members of the legislature attending a meeting called *to fill a vacancy as provided by rules of the senate or rules of the house of representatives, or attending a meeting of the senate called for whatever reason by the president or attending a meeting of the house of representatives called for whatever reason by the speaker* shall receive compensation, expense allowances and mileage as provided by K. S. A. 1975 Supp. 75-3212 and any amendments thereto." (L. 1976, ch. 234, § 1.)

All other provisions of K. S. A. 1975 Supp. 46-1601 were repealed. (L. 1976, ch. 234, § 2.) Senate Rule 21 now provides the procedure for electing a new President of the Kansas Senate. References to party caucuses are totally omitted in the Senate Rules. (1976 Senate Journal, Senate Resolution No. 1845, p. 1000.)

Because K. S. A. 1975 Supp. 46-1601 has been significantly amended and the plaintiff was able to attend the Republican Caucus, this case is moot.

The legislature in 1976 effected a major change in K. S. A. 1975 Supp. 46-1601. References to party caucuses are totally omitted from L. 1976, ch. 234 and the new Senate Rules. Admittedly a case should not be declared moot every time the law is amended by the legislature, because some amendments have minimal impact upon the overall effect of the law. (*Knowles v. State Board of Education,* 219 Kan. 271, 279, 547 P. 2d 699.) However, the 1976 amendments involved herein have a significant impact upon the overall effect of the law.

Furthermore, the Republican Caucus was open to the public and the press. We have frequently said it is the duty of the courts to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles which cannot affect the matter in issue before the court. (*Diehn v. Penner,* 169 Kan. 63, 216 P. 2d 815; *Bumm v. Colvin,* 181 Kan. 630, 312 P. 2d 827; and *Thompson v. Kansas City Power & Light Co.,* 208 Kan. 869, 494 P. 2d 1092, cert. denied, 409 U. S. 944, 34 L. Ed. 2d 215, 93 S. Ct. 270.) Here the plaintiff did not seek damages, but rather sought a declaratory judgment and a restraining order. Since this court could grant no further or additional relief under the facts and circumstances involved, the matter is moot. Should a question relating to the Kansas Open Meeting Law arise in another context, there is nothing to prevent the court from giving it consideration.

Although the case is moot, one other matter remains. The plaintiff sought a temporary restraining order. (K. S. A. 60-902.) While the trial court stated many times it was not resolving the matter on the merits, its effort to label the order a "temporary restraining order" is erroneous. In effect, the trial court issued a temporary injunction. The restraint which an order purports to impose, and not the name given to it, determines its true nature and character. (*Hayward v. State Corporation Comm.*, 151 Kan. 1008, 1013, 1014, 101 P. 2d 1041, and authorities cited therein; and 42 Am. Jur. 2d, Injunctions, § 14.)

The distinction between a temporary injunction and a restraining order is important. In 43 C. J. S., Injunctions, § 8, it is stated:

"A restraining order is an order granted to maintain the subject of controversy in status quo until the hearing of an application for a temporary injunction. Its purpose is merely to suspend proceedings until there may be an opportunity to inquire whether any injunction should be granted, and it is not intended to operate as an injunction pendente lite, and should not in effect determine the issues involved before the parties can have their day in court or give an advantage to either party by proceedings in the acquisition or alteration of the property the right to which is disputed while the hands of the other party are tied." (p. 415.)

(See also *Ostler v. Nickel*, 196 Kan. 477, 479, 413 P. 2d 303; and *Major v. Sowers*, 297 F. Supp. 664 [E. D. La. 1969].) Here the trial court's order erroneously altered the *status quo* without giving the appellants sufficient notice to be prepared or fully heard, without a full hearing, and without a clear showing of entitlement to relief. As such the order is void.

Some have construed the trial court's order as a final decision on the merits. (See, Attorney General Opinion No. 75-362.) While this was certainly not intended by the trial court, that interpretation is a natural consequence of the trial court's erroneous use of a temporary restraining order. To clear the record we vacate the erroneous order of the trial court.

The order of the lower court is vacated, and the appeal is dismissed as moot.