No. 57,630

Robert R. Kimberlin and Galen L. Schaefer, *Appellants,* v. City of Topeka, Kansas; William B. McCormick, Jack F. Alexander, James L. Claussen, Harry L. Felker, and William P. Sheahan, as members of the governing body, The Board of Commissioners of the City of Topeka, Kansas; and The Board of County Commissioners of Shawnee County, Kansas; Roland G. Hug, Dennis R. Taylor, and Larry D. Woodward, as members of the governing body of Shawnee County, Kansas, *Appellees.*

(710 P.2d 682)

Opinion filed December 6, 1985.

*John E. Stumbo,* of Stumbo & Stumbo, of Topeka, argued the cause and was on the brief for appellants.

*Stephen P. Weir,* of Hiatt & Carpenter, Chartered, of Topeka, argued the cause, and *Edwin P. Carpenter,* of the same firm, was on the brief for appellees.

The opinion of the court was delivered by

McFarland, J.: This is a consolidated appeal of three actions challenging the validity of an airport hazard zoning joint ordinance and resolution enacted by the City of Topeka and the County of Shawnee. The plaintiffs are landowners in the area subject to the ordinance/resolution. The district court upheld the validity of the ordinance/resolution in a trial of the consolidated cases and plaintiffs appeal therefrom.

The ordinance of the defendant City of Topeka is No. 14650 and was adopted on May 13, 1980. The defendant City's ordinance is codified as Topeka, Kansas, Code Art. II, Sec. 4-55 through 4-64 (1985).

The resolution of the defendant Board of County Commissioners is No. 80-75 and was adopted on May 20, 1980. The joint ordinance and resolution will, for the sake of simplicity, be hereinafter referred to as the "ordinance." The ordinance is an airport hazard zoning ordinance and applies to the Forbes Field and Phillip Billard Airports.

Plaintiff Robert R. Kimberlin owns property in the affected zone near Forbes Field. Plaintiff Galen L. Schaefer owns property in the affected zone near Phillip Billard Airport. The actions have a complex procedural history which includes an abortive attempt at a class action. The procedural history is not involved in the issues on appeal and need not be set forth herein.

The ordinance is lengthy and portions thereof will be set forth specifically as needed for discussion for particular issues raised. The ordinance places height and use restrictions on property located near the two airports. Statutory authority for adoption of such ordinances is set forth in the airport zoning act, K.S.A. 3-701 *et seq.*

With this brief background, we turn now to the issues raised on appeal. The first issue challenges the validity of a portion of the ordinance which permits the placing of markers or warning lights on nonconforming uses within the subject area.

Specifically, the ordinance provides in pertinent part:

"Section 7. Nonconforming Uses. (1) Regulations not Retroactive - The regulations prescribed by this joint ordinance/resolution shall not be construed to require the removal, lowering, or other changes or alteration of any structure or tree not conforming to the regulations as of the effective date of this joint ordinance/resolution, or otherwise interfere with the continuance of nonconforming use.

"(2) Marking and Lighting - Notwithstanding the preceding provision of this Section, the owner of any existing nonconforming structure or tree is hereby required to permit the installation, operation, and maintenance thereon of such markers and lights as shall be deemed necessary by the Executive Director of the Metropolitan Topeka Airport Authority to indicate to the operators of aircraft in the vicinity of the airport, the presence of such airport hazards. Such markers and lights shall be installed, operated, and maintained at the expense of the Metropolitan Topeka Airport Authority."

This is codified as Sec. 4-60(a) and (b) of the City Code of Topeka.

Plaintiffs contend Section 7(2) permits an unconstitutional public taking of private property without compensation and,

further, that such provision exceeds the grant of authority in the enabling statutes, K.S.A. 3-706(2) and 3-707(3).

Defendants argue this issue is not properly before the court. Although defendants' argument in this regard is couched in terms of plaintiffs' alleged lack of standing to raise the issue, the question is really whether the issue is a proper matter for determination.

Section 7 of the ordinance applies only to *nonconforming* uses of property in the areas subject thereto. What is a nonconforming use relates wholly to land uses existing as of the effective date of the ordinance. It is uncontroverted there were no nonconforming uses of the property anywhere in the subject areas. The complained-of provision of Section 7(2) of the ordinance has not, does not, and can never have any application. Under these circumstances the validity of Section 7(2) is an abstract question. As stated in *Knowles v. State Board of Education,* 219 Kan. 271, 547 P.2d 699 (1976):

"The rule as to moot questions is one of court policy, founded upon the proposition that, except when under some statutory duty to do so, courts do not sit for the purpose of giving opinions upon abstract propositions not involving actual controversy presented for determination." Syl. ¶ 2.

See also *City of Roeland Park v. Cross,* 229 Kan. 269, 623 P.2d 1332 (1981), as follows:

"We have frequently stated it is the duty of the courts to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles which cannot affect the matter in issue before the court. *Randall v. Seemann,* 228 Kan. 395, 398, 613 P.2d 1376 (1980); *Burnett v. Doyen,* 220 Kan. 400, 403, 552 P.2d 928 (1976)." 229 Kan. at 270.

We conclude this issue is not a proper subject for judicial determination.

For their second issue plaintiffs contend the ordinance is impermissibly vague.

The standards to be applied to challenge the legislation based upon alleged vagueness are set forth in *State v. Dunn,* 233 Kan. 411, 662 P.2d 1286 (1983), as follows:

"In *State v. Lackey,* 232 Kan. 478, 479, 657 P.2d 40 (1982), we recognized that the constitutionality of a statute is presumed, that all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the Constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it and, if there is any reasonable way to construe the statute as constitutionally valid, that should

be done. See also *State v. Carpenter*, 231 Kan. 235, 237, 642 P.2d 998 (1982); *Cardarella v. City of Overland Park*, 228 Kan. at 700. A statute must be sufficiently definite to meet due process standards. The test to determine whether a criminal statute is unconstitutional by reason of being vague and indefinite is whether its language conveys a sufficiently definite warning as to the conduct proscribed when measured by common understanding and practice. A statute which either requires or forbids the doing of an act in terms so vague that persons of common intelligence must necessarily guess at its meaning and differ as to its application is violative of due process. At its heart, the test for vagueness is a common sense determination of fundamental fairness. *State v. Lackey*, 232 Kan. at 479-80; *State v. Carpenter*, 231 Kan. at 237; *Cardarella v. City of Overland Park*, 228 Kan. at 703. See also *Grayned v. City of Rockford*, 408 U.S. 104, 108, 33 L.Ed.2d 222, 92 S.Ct. 2294 (1972). In determining whether an ordinance is void for vagueness two inquiries are appropriate: (1) whether the ordinance gives fair warning to those persons potentially subject to it, and (2) whether the ordinance adequately guards against arbitrary and discriminatory enforcement. *Cardarella v. City of Overland Park*, 228 Kan. at 702; *State v. Lackey*, 232 Kan. at 480. See also *Hejira Corp. v. MacFarlane*, 660 F.2d at 1365, *Casbah, Inc. v. Thone*, 651 F.2d 551, 558 (8th Cir. 1981). In *Cardarella v. City of Overland Park*, 228 Kan. at 706, we also noted: (1) upon challenges for vagueness greater leeway is afforded statutes regulating business than those proscribing criminal conduct; and (2) a statute is not to be struck down only because marginal cases could be put where doubts might arise." 233 Kan. at 418.

The vagueness challenge to the ordinance is two-pronged:
1. The definition of "airport hazard" is so vague as to fail to give fair notice of proscribed land usage; and
2. the height restrictions are so complex and confusing that a landowner cannot determine what restriction applies.

We shall first consider the issue raised as to the term "airport hazard." In pertinent part, the ordinance provides:

"Section 1. Statement of Purpose. It is hereby found that an airport hazard endangers the lives and property of users of Forbes Field and Phillip Billard Airports, and property or occupants of land in their vicinities, and also if the obstruction type, in effect reduces the size of the area available for the landing, take-off, and maneuvering of the aircraft, thus tending to destroy or impair the utility of Forbes Field and Phillip Billard Airports and the public investment therein.
Accordingly, it is declared:
(1) That the creation or establishment of an airport hazard is a public nuisance and injury to the regions served by Forbes Field and Phillip Billard Airports.
(2) That it is necessary in the interest of the public health, public safety, and general welfare that the creation or establishment of airport hazards be prevented; and
(3) That the prevention of these hazards should be accomplished, to the extent legally possible, by the exercise of the police power.
It is further declared that both the prevention of the creation or establishment of

airport hazards and the elimination, removal, alteration, mitigation, or making and lighting of existing airport hazards are public purposes.

. . . .

"Section 3. Definitions. As used in this joint ordinance/resolution, unless the context otherwise requires:

(1) Airport - The Forbes Field Airport and the Phillip Billard Airport.

. . . .

(3) Airport Hazard - Any structure or object of natural growth located on or in the vicinity of a public airport, or any use of land near such airport, which obstructs the airspace required for the flight of aircraft in landing or takeoff at such airport or is otherwise hazardous to such landing or takeoff of aircraft.

(4) Structure - An object constructed or installed by man, including, but without limitation, buildings, towers, smokestacks, earth formation, and overhead transmission lines.

(5) Tree - Any object of natural growth.

. . . .

"Section 6. Use Restrictions. Notwithstanding any other provisions of this joined ordinance/resolution, no use may be made of land or water within any zone established by this joint ordinance/resolution in such a manner as to create electrical interference with navigational signals or radio communication between airport and aircraft, make it difficult for pilots to distinguish between airport lights and others, resulting in a glare in the eyes of pilots using the airport, impair visibility in the vicinity of the airport or otherwise in any way create a hazard or endanger the landing, takeoff, or maneuvering of aircraft intending to use the airport."

The above-cited sections of the ordinance (with the exception of the statement of purpose) are codified in the Topeka Code in Sections 4-56 and 4-59 thereof.

Plaintiffs complain that what is or is not an airport hazard lacks adequate specificity to apprise affected landowners of impermissible land usage.

In the enabling act (K.S.A. 3-701 *et seq.*) "airport hazard" is defined in K.S.A. 3-701(2), as follows:

" 'Airport hazard' means any structure or tree or use of land which obstructs the airspace required for the flight of aircraft in landing or taking-off at any airport or is otherwise hazardous to such landing or taking-off of aircraft."

Plaintiffs contend the ordinance is impermissibly vague because it does not specify precisely land usages that constitute airport hazards within the purview of the ordinance. However, plaintiffs' counsel, in oral argument before this court, conceded that inclusion of a "laundry list" of airport hazards is not feasible. Land usage in a particular manner in one part of the airport hazard zone might constitute an airport hazard while identical usage in another part of the zone might not. This results from the

fact the airport hazard arises from the effect of the land usage rather than the land usage itself. Airport hazards can include such diverse matters as glare and smoke affecting a pilot's ability to make safe landings and takeoffs and electrical transmissions interfering with radio or electronic equipment on an airplane.

If a question arises relative to a usage being an airport hazard, the City's Chief Building Inspector or the County's Zoning Administrator will make the initial determination. Persons adversely affected thereby could challenge the reasonableness of the determination. We conclude the vagueness challenge to the term "airport hazard" is without merit.

The second prong of the vagueness challenge relates to the height restriction contained in the ordinance.

It is certainly true that a person of average intelligence and experience would have some difficulty ascertaining from the ordinance and the maps of airport zoning districts precisely what height restrictions apply to his or her property. This difficulty arises from the complexity of the zoning purpose rather than unskillful or sloppy drafting of the ordinance. Essentially, the farther the property is located from the airport site, the higher are the height limitations, but more is involved than a series of concentric circles. Pie-shaped pieces within those circles extend from the airport runways which have lower height restrictions. Additionally, reference must be made to elevation maps, as the height limitations presuppose the land in the zoned area to be level. The higher elevation of a particular area of land would lower the height restriction placed thereon. However, a landowner may ascertain the height restriction (or restrictions) applicable to his or her property by inquiry to the appropriate public officer. The officer's determination is not a matter of whim but must be based upon his examination of the ordinance and applicable maps. A landowner dissatisfied with the determination could, of course, challenge same and have the validity of the determination examined.

Some topics of legislation are, by their very nature, complex. Airport hazard zoning legislation is one of these areas. The federal Internal Revenue Code is an infamous example of the class.

We conclude the vagueness challenge to the portions of the ordinance pertaining to height restrictions is without merit.

For their third issue plaintiffs contend the height and use *restrictions are beyond the constitutionally permissible limits of zoning* as they constitute a taking of private property without just compensation and due process of law.

This issue does not challenge the propriety of particular height and use restrictions as applied to plaintiffs' properties. That is, plaintiffs do not contend that a specific intended use is being wrongfully precluded on a particular tract or that a particular height restriction is unreasonable or wrongful. Rather, the issue is a broadside attack on the right of defendants to restrict the usage of any property in the subject areas by zoning as opposed to purchase of property rights.

Plaintiffs are clearly rankled by the fact federal money was received by the Metropolitan Topeka Airport Authority which, plaintiffs contend, could have been used to purchase easements and property from landowners but was utilized for other aspects of airport improvement. Plaintiffs contend defendants are taking, by zoning legislation, property interests which should have been purchased. Plaintiffs do not seriously challenge the concept that airport safety is a proper subject for exercise of the police power of a political subdivision of the state. Rather, they argue that in some unspecified manner the ordinance herein goes beyond lawful zoning under the police power. The argument is difficult to follow.

Zoning ordinances of any kind limit land utilization—that is the very nature of zoning. Usage of particular property is restricted for the public welfare through zoning. Such restrictions must be reasonable, however. See generally *Houston v. Board of City Commissioners*, 218 Kan. 323, 543 P.2d 1010 (1975).

As stated by the trial court in its memorandum decision herein:

"The enactment of zoning laws has long been viewed as a valid exercise of police power, thereby not requiring compensation to be paid to the affected landowners. Even if the regulation substantially reduces the value of the property, the reduction, by itself, does not amount to a taking. *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1928). If the government appropriation, however, is such that the property rights are so impaired that the present use of the property is effectively destroyed, compensation is required. *United States v. Causby*, 328 U.S. 256 (1946).

"The United States Supreme Court recently discussed the concept of governmental 'taking' in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104, *reh. denied*, 439 U.S. 883 (1978), in upholding New York City's Landmark Preservation Law. In *Penn Central*, the Supreme Court held that:

" 'In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with the rights in the parcel as a whole.' "
*Id.* at 130-131. In its analysis, the Court held that if the restriction on the property was not reasonably necessary to effectuate a substantial public purpose, it could be viewed as a 'taking.' *Id.* at 127.

"The ordinance in question in this action is based on the legislature's decision that airport hazards constitute a danger to the lives and property of the users of the airport *and* the occupants of the land in the airport's vicinity. This purpose is intimately related to the safety and welfare of the public, therefore well within the police power extended to local governments under K.S.A. 3-701 *et seq.* Furthermore, there has been no showing that the zoning ordinance, which contains a grandfather and variance provision, in any way interferes with the present use of the property or that it enables the physical invasion of the property since air easements have already been purchased.

"For the foregoing reasons, the Court finds that the Forbes Field and Phillip Billard Airports Hazard Zoning Ordinance/Resolution is not a 'taking' of the Plaintiffs' property and therefore does not violate the Fifth Amendment of the United States Constitution."

We conclude this issue is without merit.

For their final issue plaintiffs argue the ordinance is not reasonable for failure of defendants to consider the factors set forth in K.S.A. 3-706(1). The statute provides:

"All airport zoning regulations adopted under this act shall be reasonable and none shall impose any requirement or restriction which is not reasonably necessary to effectuate the purposes of this act. In determining what regulations it may adopt, each political subdivision shall consider, among other things, the character of the flying operations expected to be conducted at the airport, the nature of the terrain within the airport hazard area, the character of the neighborhood, and the uses to which the property to be zoned is put and adaptable."

As previously noted, the ordinance and the various maps necessary for its implementation are complex documents. Specialized expertise was necessary for their preparation. The original draft of the ordinance was prepared in 1977 by Jon Woodward, then an employee of the Topeka Airport Authority. Mr. Woodward, who testified at trial, was at that time an airport consultant with the firm of Coffman Associates of Kansas City. The proposed ordinance quickly became a hot issue and was the subject of a number of public hearings where citizens whose property would be affected thereby voiced their protests. The ordinance became law in 1980.

The procedural history does not show any one public hearing by either defendant where each factor was specifically discussed, but an extraordinary amount of time was spent by the

defendants on the subject of the ordinance by virtue of the complexity of the matter and the vigor of the opposition.

The trial herein consisted of testimony of Jon Woodward, preparer of the original draft of the ordinance, and the two plaintiffs. Plaintiff Schaefer testified that, in his opinion, the ordinance lowered the value of his pig farm. Plaintiff Kimberlin testified he had previously filed complaints about aircraft flying low over his property. Plaintiffs essentially complained about being subjected to any aircraft hazard zoning ordinance.

The trial, lasting three hours, did not center on allegations of any particular provision, or provisions, of the ordinance being unreasonable. The issues were whether property was being taken without just compensation and whether the ordinance was vague (both issues having been previously discussed). Particular height or use restrictions on particular property were not challenged as being unreasonable. No claim was made, for example, that a 150-foot height limit was unreasonably low and that 200 feet would be reasonable. The challenge was, basically, the propriety of having any airport hazard ordinance. The way the issues developed required no defense on the reasonableness of any particular provision in the context of K.S.A. 3-706(1). The only reference in the testimony to the factors contained in said statute was a question of whether Woodward knew if the defendants had considered the factors set forth in 3-706(1). The witness answered, "I do not recall." The defendant public officials are presumed to know their duties under the law and there is no showing they failed to comply with the requirements of 3-706(1). We conclude this issue lacks merit.

The judgment is affirmed.