IN THE SUPREME COURT OF THE STATE OF KANSAS

Nos. 113,531
113,532

STATE OF KANSAS,
*Appellee*,

v.

TONY R. ROAT,
*Appellant*.

SYLLABUS BY THE COURT

1.

A case is moot when a court determines it is clearly and convincingly shown that the actual controversy has ended, that the only judgment that could be entered would be ineffectual for any purpose, and that it would not have an impact on any of the parties' rights.

2.

The mootness doctrine is based on and gives effect to prudential considerations, such as conservation of judicial resources.

3.

The determination of whether a case is moot is subject to de novo review on appeal.

4.

Before dismissing cases as moot, courts must exercise caution and explore with due consideration the wide variety of interests a party asserts.

5.

The party asserting mootness generally bears the initial burden of establishing that a case is moot in the first instance.

6.

In an appeal solely challenging a sentence, the party asserting mootness may establish a prima facie showing of mootness by demonstrating that the defendant has fully completed the terms and conditions of his or her sentence.

7.

Upon a prima facie showing of mootness, the burden shifts to the party opposing the mootness challenge to show the existence of a substantial interest that would be impaired by dismissal or that an exception to the mootness doctrine applies.

8.

The prospect of a later suit for damages may create a sufficient interest in a case pending before an appellate court to allow the case to survive a mootness challenge.

9.

Changed circumstances will not lead to dismissal of an appeal if leaving a judgment intact might affect vital rights of the parties.

10.

Legal malpractice claims cannot be grounded on an attorney's failure to make arguments for a change in the law, even if such a change later takes place.

11.

An abstract interest in the outcome of litigation does not prevent the litigation issue from becoming moot; the interest must have an impact on the legal rights of a party.

12.

Mere stigma or "rightness" is insufficient to justify continuing to exercise jurisdiction over an appeal.

13.

When courts are addressing possible mootness, litigants must do more than mention speculative rights; they must give substance to their arguments when asserting that protection of collateral rights necessitates resolution of their underlying appellate issues. In a similar vein, appellate courts must analyze and evaluate those arguments before exercising the prudential authority to dismiss appeals because of mootness.

Review of the judgment of the Court of Appeals in an unpublished order filed February 3, 2016. Appeal from Sedgwick District Court; JOHN J. KISNER JR., judge. Opinion filed June 19, 2020. Judgment of the Court of Appeals dismissing the appeal is affirmed.

*Jennifer C. Roth*, of Kansas Appellate Defender Office, argued the cause, and *Corrine E. Gunning,* of the same office, was on the brief for appellant.

*Lance J. Gillet,* , assistant district attorney, argued the cause, and *Julie A. Koon,* and *Boyd K. Isherwood,* assistant district attorneys, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

ROSEN, J.: In 2009, Tony Roat was charged with one count of making a criminal threat, charged as a severity level 9, nondrug person felony. He eventually entered into a plea agreement to that charge. On December 18, 2009, he was sentenced to a term of 11 months, with a 12-month probation period. In determining his criminal history, the district court relied on a 1984 Kansas burglary conviction that the presentence investigation report (PSI) classified as a person felony. On August 4, 2010, his probation was revoked and the prison term was imposed.

On May 17, 2011, Roat entered into a plea agreement in a separate case to one count of possession of a controlled substance, a severity level 4 drug felony. Prior to sentencing, he filed a motion to withdraw his plea, arguing that he was actually innocent because he did not possess methamphetamine. The motion was denied. On April 26, 2012, the district court sentenced him to 34 months in prison, with an effective beginning sentence date of December 16, 2011. The district court again relied on the 1984 burglary classification. In both cases, Roat did not object to his criminal history score. The district court's denial of his motion to withdraw his plea was affirmed in *State v. Roat*, No. 108,102, 2013 WL 4046450 (Kan. App. 2013) (unpublished opinion), *rev. denied* 299 Kan. 1273 (2015).

On June 9, 2014, Roat filed through counsel a motion to correct an illegal sentence, alleging that the court had improperly calculated his criminal history when imposing his sentence, in light of *State v. Murdock*, 299 Kan. 312, 323 P.3d 846 (2014), and *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015). Counsel filed a similar motion in November 2014, arguing that both sentences were illegal. The district court denied the motions.

4

Roat appealed to the Court of Appeals. On January 15, 2016, the State filed a notice of change of custodial status, informing the court that, as of February 28, 2015, Roat was no longer subject to Kansas Department of Corrections supervision because he had satisfied both the prison and post-release supervision provisions of his sentences in the two cases. On January 20, 2016, the Court of Appeals issued an order directing him to show cause why the appeal should not be dismissed as moot. Roat filed a response, in which he argued that his sentence could have an impact on future sentences and that he might want to pursue a legal malpractice claim against his trial attorney for not raising the *Murdock* and *Dickey* issues when he was sentenced. The Court of Appeals noted the response and dismissed his appeal. This court granted review over this dismissal.

Both before and after oral argument, the parties filed letters and responses under Rule 6.09 (2020 Kan. S. Ct. R. 39), in which they cited to cases and statutory amendments relating to the effect that possible changes in the law might have on this appeal. On July 17, 2019, this court issued an order directing the parties to file supplemental briefing on the impact that 2019 amendments to K.S.A. 22-3504 might have on the appeal. Both parties filed supplemental briefs as directed, and their positions are noted.

*Discussion*

The sole issue in this appeal is whether Roat's appeal has become moot as a consequence of the expiration of his sentencing conditions. It is tempting to take shortcuts when addressing such a question, either by adopting a bright line rule that expiration of a sentence necessarily renders an appeal moot or by holding that any asserted legal interest in continuing appellate review suffices to preserve an appeal.

5

We consider either approach improper, however, both in terms of protecting the rights of parties to have their day in court and in terms of protecting courts from burdensome and fruitless litigation. Our analysis includes the following: a discussion of the basis and application of the mootness doctrine, and the consequent standard of review; an examination of the ruling by the Court of Appeals in light of that discussion; an analysis of Roat's claims as they relate to mootness; and the effect of the 2019 amendments to K.S.A. 22-3504 on Roat's appeal. We will conclude that the Court of Appeals properly dismissed the appeal as moot, despite engaging in either erroneous or insufficient analysis of the question.

*The Mootness Doctrine*

A case is moot when a court determines that "'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact any of the parties' rights.'" *State v. Montgomery*, 295 Kan. 837, 840-41, 286 P.3d 866 (2012). A case that is moot is properly subject to a motion to dismiss. *Hanson v. Griffing*, 129 Kan. 597, 283 P. 659 (1930).

A. Mootness Is a Discretionary Policy Based on Judicial Economy

Kansas has historically considered the mootness doctrine as grounded in preserving court resources and time. As early as 1899, this court stated its basis for declining to consider "mere moot questions": "'The time of this court ought not to be occupied by the consideration of abstract questions of law, however important and interesting they may be.'" *State, ex rel., v.Railway*, 90 Kan. 20, 56 P. 755 (1899) (quoting *Hurd v. Beck,* 88 Kan. 11, 12, 45 P. 92 [1896]).

6

In 1945, this court explicitly rejected a jurisdictional component to mootness and described mootness as a "rule of court policy," explaining that "[t]he fact that an issue has become moot does not necessarily mean that the appellate court is without jurisdiction to determine it." *Moore v. Smith*, 160 Kan. 167, 170-71, 160 P.2d 675 (1945). This understanding of mootness was consistently maintained for about 15 years. See, e.g., *State ex rel. Anderson v. Engler*, 181 Kan. 1040, 1042, 317 P.2d 432 (1957).

But this court began to stray from that course in 1961, when it stated that a trial court "had no authority to enter any judgment other than a dismissal of the action" when an issue was moot. *Graves v. State Bd. of Pharmacy*, 188 Kan. 194, 197, 362 P.2d 66 (1961). With that holding, the *Graves* court implied that mootness is a question of jurisdiction.

From that point, the court bounced between the two lines of thought. In 1976, it confirmed *Moore*, explaining that mootness does not deprive a court of jurisdiction to decide an issue. *Knowles v. State Bd. of Ed.*, 219 Kan. 271, 278, 547 P.2d 699 (1976). But, in 1980, it reverted to the opinion that a "court is without constitutional authority to render advisory opinions," explaining that "[s]uch an opinion would go beyond the limits of determining an actual case or controversy and would violate the doctrine of separation of powers." *Nat'l Ed. Ass'n-Topeka, Inc. v. U.S.D. 501.*, 227 Kan. 529, 531-32, 608 P.2d 920 (1980). In 1985, it cited *Knowles* and recognized mootness as a question of court policy. *Kimberlin v. City of Topeka*, 238 Kan. 299, 301, 710 P.2d 682(1985). But in 1991, it cited *Nat'l Ed. Ass'n-Topeka, Inc.* and described mootness as a jurisdictional consideration. *Miller v. Ins. Mgmt. Assocs., Inc.*, 249 Kan. 102, 109-10, 815 P.2d 89 (1991).

In these decisions, the court has not acknowledged the tension between the two lines of thought. To the contrary, in 1991, it appeared to embrace both. It said "'the court

7

is without constitutional authority to render advisory opinions[,]' [but] [a]n exception to this general rule is recognized where the case involves a question of public interest even though it has become moot as to the parties involved." *State ex rel. Stephan v. Johnson*, 248 Kan. 286, 290-91, 807 P.2d 664 (1991). In stating that the court has no constitutional authority to decide a moot issue but then recognizing that it will decide a moot issue when a certain exception applies, the court apparently regarded mootness as both jurisdictional and prudential.

From there, this court's decisions embraced one or the other of these positions without acknowledging the existence of the other. See, e.g., *Allenbrand v. Zubin Darius Contractor*, 253 Kan. 315, 317, 855 P.2d 926 (1993); *Sheila A. v. Finney*, 253 Kan. 793, 796-97, 861 P.2d 120 (1993) (mootness is jurisdictional); *Board of County Commissioners v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 (1996) (mootness is court policy); *Smith v. Martens*, 279 Kan. 242, Syl. ¶ 1, 106 P.3d 28 (2005) (mootness is court policy).

In 2008, this court expanded on its position that mootness is a jurisdictional question. In *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 888-98, 179 P.3d 366 (2008), this court that the "separation of powers doctrine embodied in the Kansas constitutional framework" imposes a "constitutional case-or-controversy requirement" and explained that, if an issue fails to present a case or controversy, a Kansas court is without power to decide that issue. This court then set out four requirements of a case or controversy. It said, "As part of the Kansas case-or-controversy requirement, courts require: (a) parties must have standing; (b) *issues cannot be moot*; (c) issues must be ripe, having taken fixed and final shape rather than remaining nebulous and contingent; and (d) issues cannot present a political question." (Emphasis added.) 285 Kan. at 896.

8

This court has cited *Sebelius* a number of times for the notion that there is no case or controversy when an issue is moot. See *Creecy v. Kansas Department of Revenue*, 310 Kan. 454, 460, 447 P.3d 959 (2019) (one of four elements of case-or-controversy requirement is that issue not be moot); *State v. Cheever*, 306 Kan. 760, 786, 402 P.3d 1126, *cert. denied* 138 S. Ct. 560 (2017) (same); *Solomon v. State*, 303 Kan. 512, 521, 364 P.3d 536 (2015) (same); *Gannon v. State*, 298 Kan. 1107, 1119, 319 P.3d 1196 (2014) (same).

Since 2008, this court has included mootness in this list of four considerations when setting out the law before analyzing whether the parties have standing, whether an issue is ripe, or whether an issue is a political question. But when it has considered only whether an issue was moot, this court has not mentioned the jurisdictional role of mootness or its place in the case and controversy analysis. Instead, it has continued to describe mootness as a doctrine grounded in court policy. See *Mundy v. State*, 307 Kan. 280, 288, 408 P.3d 965 (2018); *State v. Hollister*, 300 Kan. 458, 467, 329 P.3d 1220 (2014) *State v. Williams*, 298 Kan. 1075, 1082, 319 P.3d 528 (2014); *State v. Hilton*, 295 Kan. 845, 849, 286 P.3d 871 (2012); *State v. Bennett*, 288 Kan. 86, 89, 200 P.3d 455 (2009).

Recognizing mootness to be a discretionary policy aimed at avoiding unnecessary or fruitless issues has the benefit of allowing a court to consider moot issues when judicial economy would benefit from a decision on the merits. For example, in *Parsons v. Bruce*, 270 Kan. 839, 841-42, 19 P.3d 127 (2001), an issue was raised concerning the computation of a conditional release date. The appellant was conditionally released while the appeal was pending. This court elected to retain the appeal "in the interest of judicial economy" despite its apparent mootness. 270 Kan. 842. See also *State v. Berry*, 292 Kan. 493, 514, 254 P.3d 1276 (2011) (court addresses issues rendered moot by reversal for reasons of judicial economy).

9

The discretionary, policy-based approach to mootness contrasts with a jurisdictional approach to which federal courts nominally subscribe. As has been frequently noted, however, the federal constitutional theory is not grounded in history and is not applied consistently.

The constitutional, jurisdictional concept of mootness is relatively new to the federal courts. It first appeared in 1964—in a footnote that referred to two law journal articles but to no cases—in *Liner v. Jafco, Inc.*, 375 U.S. 301, 306 n.3, 84 S. Ct. 391, 11 L. Ed. 2d 347 (1964). From there, the *Jafco* dicta gradually picked up steam, with a slowly expanding body of cases citing to *Jafco* and to other cases citing to *Jafco*, eventually leading to a general, but not exclusive, federal doctrine that mootness is grounded in Article III of the United States Constitution. This phenomenon is explored in detail by Matthew I. Hall in *The Partially Prudential Doctrine of Mootness*, 77 Geo. Wash. L. Rev. 562 (2009). Hall summarized the inconsistencies in federal mootness law:

"The law of mootness lacks a coherent theoretical foundation. On the one hand, mootness has been regarded—at least since 1964—as a limitation on federal court jurisdiction, mandated by Article III of the United States Constitution. Under this account, because mootness is a constitutional, and not merely a prudential, limitation on federal court jurisdiction, it is not waivable, may be raised at any point in the litigation, and must be raised by the Court sua sponte where circumstances suggest a possible mootness issue.

"On the other hand, courts routinely hear moot cases where strong prudential reasons exist to do so—a practice that cannot be reconciled with the belief that mootness is a mandatory jurisdictional bar. So-called 'exceptions' to the doctrine of mootness endow courts with extensive discretion about which moot claims they will dismiss and which they will choose to hear. For example:

10

"• There is a longstanding practice among courts of hearing moot claims, so long as the claim is inherently short-lived and the party asserting the claim also has a reasonable expectation that the asserted wrong could recur.

"• Under certain circumstances, federal courts allow plaintiffs with moot claims to avoid dismissal by asserting the rights of nonparties under several ostensibly distinct doctrines that I will refer to collectively as the doctrine of 'third-party nonmootness.'

"• Federal courts have repeatedly declined to dismiss apparently moot claims based on discretionary factors having to do with judicial administration or authority, such as sunk costs on the part of courts, or evidence of gamesmanship by a party in taking action that appears calculated to moot the case.

"Courts and scholars refer to the doctrines under which courts elect to hear moot cases as 'exceptions' to the mootness bar, but these exceptions do not 'prove the rule'— they debunk it. The exceptions to mootness do not appear to be based on any interpretation of Article III's Case or Controversy Clause—as they would be if mootness were actually applied as a constitutionally mandated limit on federal court jurisdiction. Rather, as articulated and applied, they are based on prudential considerations, such as protection of judicial efficiency and authority, the preference for sufficiently-motivated parties, and avoidance of party gamesmanship. The frequent invocation of these exceptions by federal courts is thus hard to reconcile with the conventional understanding of mootness as a constitutionally mandated jurisdictional bar." 77 Geo. Wash. L. Rev. at 562-64.

Hall concluded that the haphazard application of the constitutional jurisdictional basis of federal mootness law "is symptomatic of a deep confusion at the core of the modern understanding of mootness." 77 Geo. Wash. L. Rev. at 564. This confusion has expressed itself when courts have attempted to sort out the inconsistencies. See, e.g., *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1121-22 (10th Cir. 2010) (federal courts recognized two kinds of mootness: constitutional and prudential;

11

the latter is based on considerations of prudence and comity and discretion whether to exercise court's constitutional power).

In a concurring opinion in *Honig v. Doe*, 484 U.S. 305, 330-31, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988), Chief Justice Rehnquist discussed the evolution of the federal jurisdictional mootness doctrine. He noted that the federal courts rely on the "case or controversy" requirement—except when they don't. He pointed out common examples of the federal courts sidestepping the case or controversy requirement when it was judicially prudent to do so, and he even argued that cases that have been fully briefed and argued should be decided, even if intervening events would eliminate a case or controversy:

"The logical conclusion to be drawn from these cases, and from the historical development of the principle of mootness, is that while an unwillingness to decide moot cases may be connected to the case or controversy requirement of Art. III, it is an attenuated connection that may be overridden where there are strong reasons to override it. The 'capable of repetition, yet evading review' exception is an example. So too is our refusal to dismiss as moot those cases in which the defendant voluntarily ceases, at some advanced stage of the appellate proceedings, whatever activity prompted the plaintiff to seek an injunction. See, *e.g.*, *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289, n. 10, 102 S. Ct. 1070, 1074, n. 10, 71 L. Ed. 2d 152 (1982); *United States v. W.T. Grant Co.*, 345 U.S. 629, 632, 73 S. Ct. 894, 897, 97 L. Ed. 1303 (1953). I believe that we should adopt an additional exception to our present mootness doctrine for those cases where the events which render the case moot have supervened since our grant of certiorari or noting of probable jurisdiction in the case. Dissents from denial of certiorari in this Court illustrate the proposition that the roughly 150 or 160 cases which we decide each year on the merits are less than the number of cases warranting review by us if we are to remain, as Chief Justice Taft said many years ago, 'the last word on every important issue under the Constitution and the statutes of the United States.' But these unique resources—the time spent preparing to decide the case by reading briefs, hearing oral argument, and conferring—are squandered in every case in which it becomes apparent after the decisional process is underway that we may not reach the question

12

presented. To me the unique and valuable ability of this Court to decide a case—we are, at present, the only Art. III court which can decide a federal question in such a way as to bind all other courts—is a sufficient reason either to abandon the doctrine of mootness altogether in cases which this Court has decided to review, or at least to relax the doctrine of mootness in such a manner as the dissent accuses the majority of doing here. I would leave the mootness doctrine as established by our cases in full force and effect when applied to the earlier stages of a lawsuit, but I believe that once this Court has undertaken a consideration of a case, an exception to that principle is just as much warranted as where a case is 'capable of repetition, yet evading review.'" 484 U.S. at 331-32.

Both the history of the mootness doctrine in Kansas, with the law developing on a prudential basis independent of federal analysis, and the problem of exceptions to the jurisdictional basis that inheres in the federal constitutional reasoning, lead us to conclude that the better approach is to consider mootness a prudential doctrine. Kansas recognizes an exception, for example, for cases that are otherwise moot but that raise issues that are capable of repetition and present concerns of public importance. See, e.g., *State v. Kinder*, 307 Kan. 237, 244, 408 P.3d 114 (2018). If mootness were jurisdictional, we could not have such court-created exceptions. See *State v. Montgomery,* 295 Kan. 837, 841, 286 P.3d 866 (2012); *Operation Save America v. City of Jackson*, 275 P.3d 438, 449 (Wyo. 2012) ("Our mootness exceptions illustrate that Wyoming's mootness doctrine, like that of many other state, is prudential rather than constitutionally based. [Citation omitted.]").

## B. Standard of Review

This brings us to our standard of review, which is de novo and is predicated on prudential considerations. As we held in *Hilton*,

"Generally, Kansas appellate courts do not decide moot questions or render advisory opinions. [Citation omitted.]That doctrine, however, is not a question of

13

jurisdiction. Rather, this court has previously described the mootness doctrine as a court policy, which recognizes that the role of a court is to "'determine real controversies relative to the legal rights of persons and properties which are actually involved in the particular case properly brought before it and to adjudicate those rights in such manner that the determination will be operative, final, and conclusive.'" *State v. Bennett*, 288 Kan. 86, 89, 200 P.3d 455 (2009) (quoting *Board of Johnson County Comm'rs v. Duffy*, 259 Kan. 500, 504, 912 P.2d 716 [1996]).

"A court policy necessarily comes about through prior opinions of the court, *i.e.*, the mootness doctrine developed through court precedent. Accordingly, our review is unlimited. See *State v. May*, 293 Kan. 858, 862, 269 P.3d 1260 (2012) ('To the extent our decision involves ... the interpretation and application of ... court precedent, we are resolving questions of law and, thus, exercising unlimited review. *Johnson v. Brooks Plumbing*, 281 Kan. 1212, 1213, 135 P.3d 1203 [2006].')." 295 Kan. at 849.

C.  Courts Must Exercise Caution When Applying the Mootness Doctrine

When presented with cases that involve tenuous or peripheral rights or remedies, it may be tempting to exercise prudential considerations and dismiss those cases in the interest of judicial economy. While such a course can be a proper application of judicial discretion, it must be exercised with caution and only upon due consideration of the wide variety of interests a party asserts.

Litigants must have some effective means to vindicate injuries suffered to their rights without being shut out of court. See *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). In other words, individuals are entitled to their "day in court." See *In re Oliver*, 333 U.S. 257, 273, 68 S. Ct. 499, 92 L. Ed. 682 (1948); *Terrell v. Allison*, 88 U.S. (21 Wall.) 289, 292, 22 L. Ed. 634 (1874); *Jackson v. City of Bloomfield*, 731 F.2d 652, 65 (10th Cir. 1984). The expeditious disposition of cases does

not supersede "'one's fundamental right to his full day in court.'" *Frito-Lay, Inc. v. Morton Foods, Inc.*, 316 F.2d 298, 300 (10th Cir. 1963).

This court has expressly recognized that a party has "the right to a day in court." See *In re Massey*, 56 Kan. 120, 122, 42 P. 365 (1895). This right is considered fundamental and expansive in its reach:

> "The constitutional guarantee of providing for open courts and insuring a civil remedy for injuries to persons and property is a statement of our philosophy and a general rule which can be used to solve civil conflicts. This right is generally regarded as one of the most sacred and essential constitutional guarantees. However, the guarantee creates no new rights but merely is declaratory of our fundamental principles. In light of this guarantee, it is the policy and the obligation of the state to furnish and of the courts to give every litigant his day in court and a full and ample opportunity to be heard. *This right extends to everyone who may be materially affected by the action of the court in a legal proceeding.* . . . It insures the right of every person protected by it to seek remedy by court action for any injuries done to him or his personal property. . . . A litigant is assured the right to prosecute or defend an action, provided he prosecutes or defends the action as contemplated by law. Since a prisoner can sue or be sued in this state he must be afforded the right to his day in court." (Emphasis added.) *State ex rel. Stephan v. O'Keefe*, 235 Kan. 1022, 1027, 686 P.2d 171 (1984).

This right to litigate actual injuries has led our United States Supreme Court to presume the existence of continuing injuries or collateral consequences when defendants seek to continue their appeals from their convictions even though their sentences have expired. See *United States v. Juvenile Male*, 564 U.S. 932, 936, 131 S. Ct. 2860, 180 L. Ed. 2d 811 (2011); *Carafas v. LaVallee*, 391 U.S. 234, 237-38, 88 S. Ct. 1556, 20 L. Ed. 2d 554 (1968) (collateral consequences include engaging in certain businesses, serving as labor union officials, voting, serving as jurors).

15

Such a presumption does not apply when a defendant seeks review only over an expired sentence. See *Spencer v. Kemna*, 523 U.S. 1, 7-14, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998); *Lane v. Williams*, 455 U.S. 624, 632-33, 102 S. Ct. 1322, 71 L. Ed. 2d 508 (1982).   Even in such cases, however, the appeal is not necessarily moot. The possibility of consequences collateral to the imposition of the sentence may suffice to justify review on the merits. See *Pollard v. United States*, 352 U.S. 354, 358, 77 S. Ct. 481, 1 L. Ed. 2d 393 (1957).

A mere surmise or belief that a party cannot prevail upon trial will not justify refusing that party a day in court. The court must decide as a matter of law that a party cannot prevail before denying that party its day in court. See *Beck v. Kansas Adult Authority*, 241 Kan. 13, 25, 735 P.2d 222 (1987).

For these reasons, we conclude that a "bright line" test, such as one that renders a sentencing appeal necessarily moot if the sentence is completed, is contrary to the law of our state. In *Montgomery*, 295 Kan. 837, Syl. ¶¶ 3, 4, we held that an appeal is moot only if judgment would be "ineffectual for *any purpose*"; a case is not moot if "it may have adverse legal consequences in the future." (Emphasis added.) An appeal should not be dismissed for mootness "unless it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual *for any purpose*, and it would not impact *any* of the parties' rights." (Emphasis added.) *Wiechman v. Huddleston*, 304 Kan. 80, 84, 370 P.3d 1194 (2016).

A determination of mootness must therefore necessarily include analysis of whether an appellate judgment on the merits would have meaningful consequences for any purpose, including future implications. We must now decide whether Roat has met his burden of demonstrating the existence of a meaningful interest that would be impaired by dismissal.

16

D. The Court of Appeals Failed to Engage in Necessary Analysis of Mootness

As we have seen, before a court may dismiss a case as moot, it must conclude that the requested relief would not have an impact on the appellant's rights. See *State v. Williams*, 298 Kan. 1075, 1082-83, 319 P.3d 528 (2014).

The party asserting mootness generally bears the initial burden of establishing that a case is moot in the first instance. See, e.g., *Cierco v. Lew,* 190 F. Supp. 3d 16, 23 (D.C. Cir. 2016). In an appeal solely challenging a sentence, the party asserting mootness may establish a prima facie showing of mootness by demonstrating that the defendant has fully completed the terms and conditions of his or her sentence. See, e.g. *Honeywell Intern., Inc. v. Nuclear Regulatory Com'n,* 628 F.3d 568, 576 (D.C. Cir. 2010) (passage of relevant time period may render case moot). The burden then shifts to the party opposing the mootness challenge to show the existence of a substantial interest that would be impaired by dismissal or that an exception to the mootness doctrine applies. See, e.g., *Cierco*, 190 F. Supp. 3d at 23.

Here, the State has shown that Roat has fully completed his sentence, which suffices to establish a prima facie showing of mootness. In her response to the Court of Appeals order to show cause, Roat's appellate counsel asserted that "a judgment in this case is necessary to determine whether Mr. Roat may pursue a legal malpractice claim against his trial attorney." The response then pointed to *Garcia v. Ball*, 303 Kan. 560, 573, 363 P.3d 399 (2015), for the proposition that an appellate court would have to rule that Roat's sentence was illegal before he would be able to prosecute his malpractice claim.

The Court of Appeals dismissed Roat's appeal under the mootness doctrine, holding that the expiration of Roat's sentence meant that the outcome of this appeal

would have "no effect on his sentence *in this case*." This was an erroneous measure of when a case is moot. In its brief discussion, the Court of Appeals cited to *Montgomery*, 295 Kan. 837. *Montgomery* did not state, however, that an appeal becomes moot when the outcome would have no effect on the case at hand. *Montgomery* repeated the well-established principle that "[a]n appeal will not be dismissed as moot unless it clearly and convincingly appears that the actual controversy has ceased and the only judgment which could be entered would be ineffectual *for any purpose*." (Emphasis added.) 295 Kan. 837, Syl. ¶ 3. See *State v. Russ*, 309 Kan. 1240, 443 P.3d 1060 (2019); *Mundy v. State*, 307 Kan. 280, 289, 408 P.3d 965 (2018); *Reeves v. Board of Johnson County Comm'rs*, 226 Kan. 397, 405, 602 P.2d 93 (1979); *Moore v. Smith*, 160 Kan. 167, 175, 160 P.2d 675 (1945). The range of collateral interests that may preserve an appeal is wide. See, e.g., *State v. McCraw*, 551 S.W.2d 692 (Tenn. 1977), where the Tennessee Supreme Court held that, for purposes of post-conviction relief, the status of being "in custody" for mootness considerations includes any possibility of restraint on liberty, including a bar from voting in another state.

In addition to failing to apply *Montgomery's* well established principle, the Court of Appeals made no reference to Roat's asserted collateral rights and also appears to have completely ignored his arguments. This summary dismissal, without further analysis, was erroneous.

The preservation of rights for future litigation is an interest that may preserve an appeal from dismissal based on mootness. In *Moore*, 160 Kan. 167, the court applied the principle of interest in future litigation to the issue before it to find that the appeal was not moot. The Governor had appointed Moore to fill a vacant sheriff's position in July 1943 after the sheriff was ousted from office. In the 1944 election, Moore was elected to serve the regular two-year term, which was set to begin January 1945. Also in that election, Smith, the defendant, was elected to serve the remainder of the ousted sheriff's

18

term. Moore filed suit, seeking to enjoin the county commissioners from certifying Smith as the sheriff. The district court granted the motion and imposed a permanent injunction. By the time the case was appealed to this court, Moore's elected term had started. Consequently, Moore argued the case should be dismissed as moot. This court disagreed. It observed that, even though Smith could no longer serve the remainder of the ousted sheriff's term, he might still be entitled to damages or to the salary from that time. It reasoned that this case was not moot because, if Smith brought an action to collect salary or damages, the issue of whether he had a rightful claim to the position could be res judicata. *Moore*, 160 Kan. at 175-76.

We accordingly conclude that the prospect of a suit for damages may create a sufficient interest in the case pending before the court to allow the case to survive assertions of mootness. For this reason, a prisoner asserting a right to sue trial counsel for malpractice may have a substantive interest in avoiding res judicata with respect to the validity of the expired sentence.

We have held a convicted criminal defendant may seek damages against his or her counsel for legal malpractice. See *Canaan v. Bartee*, 276 Kan. 116, 120, 72 P.3d 911, *cert. denied* 540 U.S. 1090 (2003). In *Canaan*, the court held that a person convicted in a criminal action must obtain postconviction relief before maintaining an action alleging malpractice against his or her criminal defense attorneys. 276 Kan. 116, Syl. ¶ 2.

In *Mashaney v. Board of Indigents' Defense Services*, 302 Kan. 625, 632, 355 P.3d 667 (2015), this court held that a criminal defendant does not have to prove actual innocence in order to bring a legal malpractice claim against his or her criminal defense attorney. But the defendant must erase criminal liability by vacation or reversal of a conviction, regardless of whether the vacation or reversal is compelled by a successful assertion of actual innocence. And, in *Garcia*, 303 Kan. 560, Syl. ¶¶ 4, 5, this court held

19

that a motion to correct an illegal sentence is the proper means of establishing that a sentence was erroneous for purposes of pursuing a subsequent legal malpractice claim.

This court has long designated bringing a suit for negligence to be a "right." See e.g., *Apodaca v. Willmore*, 306 Kan. 103, 392 P.3d 529 (2017); *Vorhees v. Baltaza*r, 283 Kan. 389, 153 P.3d 1227 (2007); *O'Grady v. Potts*, 193 Kan. 644, 396 P.2d 285 (1964); *Vaughn v. Kansas City N.W.R. Co*., 65 Kan. 685, 70 P. 602 (1902). Dismissing Roat's appeal, therefore, creates a bar to the exercise of his right to sue his attorney for damages. For that reason, he clearly states a right or interest that is affected by the dismissal of this appeal for mootness. Unfortunately, the Court of Appeals did not acknowledge, or even mention, this right that Roat asserted. We cannot know whether the Court of Appeals considered the malpractice claim or what effect that consideration may have had on its decision to dismiss.

E.  The Mootness Doctrine as Applied to This Appeal

Carrying out de novo review, we must decide whether Roat has asserted an interest sufficient to prevent dismissal for mootness.

In his response to the show cause order from the Court of Appeals, Roat stated:

> "[A] judgment in this case is necessary to determine whether Mr. Roat may pursue a legal malpractice claim against his trial attorney. . . . Here, if Mr. Roat served prison time he should not have, he may pursue a cause of action against his trial attorney for allowing his criminal history score to go uncorrected. But that action can only be brought upon a judicial determination the [*sic*] Mr. Roat's criminal history score is actually incorrect. [Citation omitted.]"

20

Roat's circumstances changed between the time that he docketed his appeal and the time it was ready for hearing, i.e., he completed the terms of his sentence. When, by reason of changed circumstances between commencement of an action and judgment on that action, a judgment would be unavailing as to the issue presented, the case is moot. *Huber v. Schmidt*, 180 Kan. 80, 82, 299 P.2d 33 (1956). Changed circumstances will not lead to dismissal of an appeal, however, if leaving a judgment intact will affect vital rights of the parties. *Carr v. Diamond*, 192 Kan. 336, 337, 388 P.2d 589 (1964).

Accordingly, we must evaluate whether Roat's interest in a malpractice suit is a vital, or substantial, right requiring a judgment in this appeal. We conclude that he has failed to demonstrate such a right.

A plaintiff must identify a "nonfrivolous," "arguable" underlying claim in forward-looking prisoner actions that seek to remove roadblocks to future litigation. See *Lewis v. Casey*, 518 U.S. 343, 352-53 & n.3, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). The predicate claim must be described well enough to apply the "nonfrivolous" test and to show that the "arguable" nature of the underlying claim is more than just "hope." *Christopher*, 536 U.S. at 416. Roat falls short of meeting this requirement.

Roat provides little in the way of the details of what he might assert as a factual basis for a legal malpractice claim. He leaves it to the appellate courts to flesh out the nature of his claims against his trial counsel. Failure to brief an analytic framework sufficiently for effective appellate review is tantamount to not raising the issue at all. See *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013); *State v. Easterling*, 289 Kan. 470, 487, 213 P.3d 418 (2009). A party should not leave the court "to guess about the specifics of how [a party] would frame his arguments . . . ." *State v. Berriozabal*, 291 Kan. 568, 594, 243 P.3d 352 (2010).

21

We are reluctant to try to put flesh onto the skeleton of a hypothetical legal malpractice claim that Roat suggests creates an interest sufficient to defeat mootness. It may be that he would argue that his attorney should have made the arguments that appellate counsel successfully made in *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015). If Roat's trial attorney had successfully made those arguments, then, the reasoning might be, he would have spent less time incarcerated.

Although Roat did not object to the scoring of his criminal history prior to sentencing, the failure to object to a criminal history score does not preclude a defendant from appealing the legal effect of prior convictions upon the calculation of his or her criminal history score. See *State v. Keel*, 302 Kan. 560, 571, 357 P.3d 251 (2015); *Dickey*, 301 Kan.1018, Syl. ¶¶ 3-4.

But there is a difference between correcting an illegal sentence based on newly articulated law and pursuing a legal malpractice action based on newly articulated law. Roat was sentenced in April 2012. The Court of Appeals issued its opinion in *State v. Dickey*, 50 Kan. App. 2d 468, 329 P.3d 1230, on June 27, 2014. Roat would have to allege malfeasance by his trial counsel for not urging the adoption of a new law.

Research does not reveal any Kansas cases allowing legal malpractice claims based on failure to make arguments that represent a change in law. Other states and legal treatises have taken the position that failing to make an argument that later proved to be good law is not grounds for malpractice.

In *Minkina v. Frankl*, 86 Mass. App. Ct. 282, 289, 16 N.E.3d 492 (2014), the court held that it is not legal malpractice to fail to advocate for or anticipate a substantial change in law requiring the overruling of a controlling precedent. The court cited *Davis v. Damrell*, 119 Cal. App. 3d 883, 888, 174 Cal. Rptr. 257 (1981) (failure to anticipate "'180

degrees shift in law' cannot serve as the basis for professional negligence" [citation omitted]); *Kaufman v. Stephen Cahen, P.A.*, 507 So. 2d 1152, 1153 (Fla. Dist. Ct. App. 1987) ("[A]n attorney's failure to accurately predict changes on an unsettled point of law is not actionable"); *Howard v. Sweeney*, 27 Ohio App. 3d 41, 43-44, 499 N.E.2d 383 (1985) ("Counsel's failure to predict a subsequent change in a settled point of law cannot serve as a foundation for professional negligence."); 4 Mallen , Legal Malpractice § 33.5 (2020) ("The rule is that an attorney is not liable for an error in judgment concerning a proposition of law that is debatable, uncertain, unsettled, or tactical.").

We determine that this is the proper rule. Otherwise, lawyers and their insurance carriers will find themselves in a perpetual guessing game, wondering what new statement of law they must argue in order to avoid liability. The issue would become even more confused with issues in which the courts do not take a direct line to a conclusion, as has been the case with *Murdock* and *Keel*.

We, therefore, conclude that Roat has failed to present the appellate courts with an adequate theory of his malpractice action to justify an appellate determination of the correctness of the sentence that he has fully served. His hypothetical malpractice is more "hope" than substance. See *Christopher*, 536 U.S. at 416. His claim does not preclude application of the mootness doctrine.

Roat also stated, at oral argument, that he has an abstract "right to a correct sentence." This is an insufficiently substantial right to warrant further appellate review. The duty of the courts is to decide actual controversies by a judgment that can be given an effect and not to give opinions on abstract propositions. *Burnett v. Doyen*, 220 Kan. 400, 403, 552 P.2d 928 (1976). Having an abstract interest in the outcome of litigation does not prevent an issue from becoming moot. *Andeel v. Woods*, 174 Kan. 556, 558, 258 P.2d 285 (1953); *Moore*, 160 Kan. at 170.

23

Mere stigma or "rightness" is insufficient to justify continuing to exercise jurisdiction over an appeal. In *St. Pierre v. United States*, 319 U.S. 41, 63 S. Ct. 910, 87 L. Ed. 1199 (1943), one of the first cases to recognize collateral consequences of conviction as a basis for avoiding mootness, the Supreme Court refused to review St. Pierre's challenge to a contempt citation after he had completed his five-month sentence, because "petitioner [has not] shown that under either state or federal law further penalties or disabilities can be imposed on him as a result of the judgment which has now been satisfied." 319 U.S. at 43. The Court rejected St. Pierre's argument that the possibility that "the judgment [could] impair his credibility as [a] witness in any future legal proceeding" was such a penalty or disability, because "the moral stigma of a judgment which no longer affects legal rights does not present a case or controversy for appellate review." 319 U.S. at 43.

Roat makes a closely related argument that the length of his sentence and his criminal history in the present case might have an impact on a future court's sentencing decision.

It is not clear what Roat means when he alleges that a future sentencing court might "take judicial notice of the journal entries in the underlying cases." Presumably, he means that a court might accept the criminal history score as listed in the journal entry of judgment without entertaining any challenge to that score by the defendant. This seems to be what the Court of Appeals panel in *State v. Lamunyon*, 21 Kan. App. 2d 281, 898 P.2d 1182 (1995), *aff'd* 259 Kan. 54, 911 P.2d 151 (1996), envisioned when it held that the case was not moot because a future "sentencing court might take judicial notice of the journal entry in this case, which states that [the defendant's] criminal history category is D." *Lamunyon*, 21 Kan. App. 2d at 286.

24

But neither the *Lamunyon* panel nor Roat explains where a sentencing court would derive the authority to do this. The statutes that govern criminal history determinations—K.S.A. 2018 Supp. 21-6813 and K.S.A. 2018 Supp. 21-6814—preclude a court from taking such action.

This court discussed the interplay between the language of these statutes in *State v. Schow*, 287 Kan. 529, 539, 197 P.3d 825 (2008). In that case, the defendant objected to the criminal history reflected in his PSI, which included two convictions out of Florida that had been listed on an earlier 1997 PSI from a Johnson County case. The district court ruled that the State met its burden to prove the defendant's criminal history when it presented the 1997 PSI and shifted the burden to the defendant to show that the prior criminal history schedule was incorrect.

We ultimately held:

"[A] defendant may file a written objection to his or her criminal history worksheet, including those convictions which may have been contained in a previous criminal history worksheet, and such an objection places the burden on the State to produce further evidence establishing the existence of the challenged conviction(s) by a preponderance of the evidence." *Schow*, 287 Kan. at 539-40.

A court can therefore accept the criminal history worksheet in the PSI as evidence of the defendant's criminal history. And, it can take judicial notice of that worksheet even if the person who prepared it is unavailable as a witness. But the defendant is entitled to challenge that criminal history worksheet, and the State is then required to prove the accuracy of the history by a preponderance of the evidence. This prevents a district court from relying solely on previous criminal history scores to calculate a sentence over a defendant's objection.

25

The *Schow* court also rejected the idea that the State could have "asserted collateral estoppel to avoid relitigating the existence of a prior conviction." 287 Kan. at 540. It pointed out that "an essential element of collateral estoppel is that the issue had been decided on its merits in the prior proceeding." 287 Kan. at 540. For that reason, if there was no prior judgment on the merits of the criminal history challenge, collateral estoppel is inapplicable. The State could only "rely upon collateral estoppel to avoid repeatedly litigating the efficacy of the same prior convictions in successive sentencing hearings." 287 Kan. at 540.

This discussion reveals that a dismissal in this case will not have the effect Roat asserts; it will not cause a future sentencing court to rely on only an earlier journal entry of sentencing to establish his criminal history. It will require Roat to object to a previous calculation of criminal history in future cases. But this future hypothetical requirement—objecting to a criminal history score—does not create a justiciable controversy.

The United States Supreme Court rejected such speculative interests in *Lane*, 455 U.S. 624, where the petitioners' sentences expired during the course of habeas corpus proceedings and the petitioners were attacking only their sentences. The Court noted:

> "At most, certain non-statutory consequences may occur; employment prospects, or the sentence imposed in a future criminal proceeding, could be affected. [Citation omitted.] The discretionary decisions that are made by an employer or a sentencing judge, however, are not governed by the mere presence or absence of a recorded violation of parole; these decisions may take into consideration, and are more directly influenced by, the underlying conduct that formed the basis for the parole violation." *Lane*, 455 U.S. at 632-33.

We conclude that Roat has failed to argue collateral interests with sufficient specificity and has failed to demonstrate that such interests have substance and are

protectable at law. His asserted interests, as they have been articulated, do not preclude dismissal for mootness. Although the Court of Appeals seems to have adopted an incorrect legal standard in its perfunctory order, it arrived at the correct conclusion: this appeal is moot. We accordingly dismiss the appeal.

In so doing, however, we note an obligation that rests on both litigants and the courts. Litigants must do more than mention speculative rights; they must give substance to their arguments when asserting that protection of collateral rights necessitates resolution of their underlying appellate issues. And appellate courts must analyze and evaluate those arguments before exercising the prudential authority to dismiss appeals because of mootness. We trust that these directives will be informative in future cases in which courts confront the question of mootness.

We further note that the statute governing correction of illegal sentences, K.S.A. 22-3504 has been amended during the pendency of this appeal. The statute now reads: "(a) The court may correct an illegal sentence at any time *while the defendant is serving such sentence.*" (Emphasis added.) A new section K.S.A. 2019 Supp. 22-3504(d) reads: "The amendments made to this section by this act are procedural in nature and shall be construed and applied retroactively." L. 2019, ch. 59, § 15.

This amendment relates to statutory authority to file a motion to correct an illegal sentence; it does not directly invoke or demonstrate mootness of motions that were filed before the amendment. Even if the amendment applies retroactively, it applies only to situations in which the defendant has not yet filed a motion before the operative date of the amendment. K.S.A. 2019 Supp. 60-2102(a) provides for appeals to the Court of Appeals as a matter of right from a final decision in any action except when a direct appeal to the Supreme Court is required. In the present case, Roat properly filed his

motion while he was serving his sentence, the district court entered a final order denying his motion, and he had a vested right to appeal an adverse ruling on that motion.

The judgment of the Court of Appeals is affirmed, subject to the reservations noted above.

LUCKERT, J., not participating.[1]
JOHNSON, J., not participating.[2]
MICHAEL J. MALONE, Senior Judge, assigned.

---

[1] **REPORTER'S NOTE:** Senior Judge Michael J. Malone was appointed to hear case No. 113,531 vice Justice Marla J. Luckert under the authority vested in the Supreme Court by K.S.A. 20-2616.

[2] **REPORTER'S NOTE:** Justice Lee A. Johnson heard oral arguments but did not participate in the final decision in case No. 113,531. Justice Johnson retired effective September 6, 2019.

* * *

BILES, J., concurring:  I concur in the result based on the rationale expressed in *State v. Tracy*, 311 Kan. __, __ P.3d __ (No. 113,763, this day decided).

\* \* \*

STEGALL, J., concurring:  I join Justice Biles' concurrence. I write to note my disagreement with portions of the majority opinion. Specifically, the majority opinion appears to abandon or at least weaken the constitutional requirement that Kansas courts decide only cases and controversies. *State ex rel. Morrison v. Sebelius*, 285 Kan. 875, 896, 179 P.3d 366 (2008) ("Kansas courts have repeatedly recognized that the 'judicial power'" granted by Article 3, §1 of the Kansas Constitution "is the 'power to hear, consider and determine controversies between rival litigants.'"). Until now, it has been axiomatic that we do not render advisory opinions—indeed, we are not constitutionally empowered to do so. *State v. Cheever*, 306 Kan. 760, 786, 402 P.3d 1126 (2017) ("Because the Kansas Constitution's framework 'limit[s] the judicial power to actual cases and controversies,' Kansas courts do not have the power to give advisory opinions."), *abrogated on other grounds by State v. Boothby*, 310 Kan. 619, 448 P.3d 416 (2019).

But in its lengthy discussion of the mootness doctrine and whether it presents a jurisdictional bar, the majority summarizes—with approval—Chief Justice Rehnquist's view that "federal courts rely on the 'case or controversy' requirement [to dismiss cases as moot]—except when they don't." Slip op. at 11. Chief Justice Rehnquist did seem to be suggesting, in a concurring opinion, that the federal mootness doctrine was premised on the "case or controversy requirement of Art. III" but that such considerations could "be overridden where there are strong reasons to override it." *Honig v. Doe*, 484 U.S. 305, 331, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988) (Rehnquist, C.J., concurring). An invitation

29

the majority accepts by concluding that we can therefore decide "otherwise moot" cases that "raise issues that are capable of repetition and present concerns of public importance" because mootness is a "prudential" doctrine. Slip op. at 13.

How are judges and litigants to understand the significance of an "otherwise moot" case other than one in which the case or controversy has ended? I cannot escape the logical conclusion that if a case or controversy has not ended, the case could never be otherwise moot. It seems, then, that today we make explicit in law what may have in the past been an unfortunate accident—that we will issue advisory opinions when we want to. I cannot agree with this practice.

When a case or controversy has ended, our jurisdiction ends. The majority genuflects to this constitutional limit on our authority while dodging it. Though not argued in this case, I suggest standing (rather than mootness) is the better legal doctrine for future courts to focus upon. If a case is "otherwise moot" because the case or controversy has ended, would a litigant have standing to pursue an issue just because it is capable of repetition and presents a matter of public importance? This, and other related questions will have to wait for another case in which the litigants raise and argue the point.