NOT DESIGNATED FOR PUBLICATION

No. 123,240

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LISA MICHELLE STOTTS,
*Appellant*.

MEMORANDUM OPINION

Appeal from Montgomery District Court; F. WILLIAM CULLINS, judge. Opinion filed December 10, 2021. Appeal dismissed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM: Lisa Michelle Stotts appeals the district court's decision to revoke her probation and impose her original sentence after finding that Stotts had absconded from supervision. Among other issues, the State responds that Stotts' appeal is moot because Stotts is no longer incarcerated on this case. Agreeing with the State, we dismiss the appeal as moot.

*Factual and Procedural Background*

Although the facts are unimportant to our disposition of this case, we include them as background.

In May 2018, Lisa Michelle Stotts tried to take one of her neighbor's children who was playing across the street in front of their home, believing the child to be her daughter. Stotts' neighbor told law enforcement that Stotts had twice come to the home where her children played in the front yard to try to take a child. An unidentified person who witnessed the incident informed police officers that, at one point, Stotts held a child by the legs and refused to let go.

When officers responded to the incident, Stotts claimed she had a daughter and that her neighbors would not let her have her child back. But when asked about her daughter's name, Stotts could not provide it. Police officers followed Stotts into the apartment as she backed away from the front door until she started to walk toward the hallway. When officers told her to stop walking and moved closer to Stotts, she ran into the back bedroom. There, she sat on a mattress on the floor, pointed to a pile of blankets on the mattress, and repeatedly told officers: "My baby is in here." Afraid that a child may be in danger, the officers ordered Stotts to stand. Stotts became combative but the police officers eventually subdued her and placed her in handcuffs. The officers did not find a child or anyone else in the apartment. Then the officers searched Stotts for contraband or weapons and found a "clear glass pipe with white residue on the inside" in her front sweatshirt pocket.

The State charged Stotts with (1) kidnapping in violation of K.S.A. 2017 Supp. 21-5408(a)(3), (2) possession of methamphetamine in violation of K.S.A. 2017 Supp. 21-5706, (3) interference with a law enforcement officer in violation of K.S.A. 2017 Supp.

21-5904, and (4) possession of drug paraphernalia in violation of K.S.A. 2017 Supp. 21-5709(b)(2).

In September 2018, Stotts pleaded no contest to one count each of methamphetamine, a severity level 5 drug felony, and endangering a child, a class A nonperson misdemeanor. The district court ordered Stotts to go to Four County Mental Health and to follow their recommendations. Soon after, Stotts posted bond to await sentencing. Her bond conditions required her to report to her Court Services officer (CSO), to submit to urine or breath testing for alcohol or drugs, to refrain from violating the law, and to refrain from drinking alcohol. Yet Stotts missed three appointments with CSO John Kirk, missing her opportunity to begin the Senate Bill 123 evaluation process. As a result, Kirk requested Stotts be detained until Court Services could get the necessary information from her. The district court issued an arrest warrant that law enforcement served about two weeks later.

Upon being released in December 2018, Stotts failed to contact Court Services, although Kirk had reminded her to do so. A week later, CSO Alexis Dunsing called the last phone number Stotts had provided. Stotts' mother answered and stated she would pass on the message to report to Court Services if she had any contact with Stotts. The district court issued an arrest warrant that law enforcement served 20 days later. This arrest was close to the date Stotts committed a new offense of possession of methamphetamine in January 2019, which led to a felony charge.

Stotts did not appear for her hearing in January 2019. Kirk told the district court he had not had contact with her. In March 2019, based on Stotts' criminal history score of I, the district court sentenced Stotts to 11 months' incarceration for possession of methamphetamine, and 12 months' postrelease supervision. The district court suspended that sentence and ordered Stotts to serve 18 months' probation. For the charge of endangering a child, the district court ordered Stotts to serve a 90-day jail sentence to run

concurrent with the 11-month sentence. The district court ordered Stotts to complete mandatory S.B. 123 drug treatment as a condition of her probation. See K.S.A. 2020 Supp. 21-6824.

Stotts completed one inpatient drug treatment program but did not complete outpatient counseling or the program's recommendations. While on probation, Stotts had an argument with her boyfriend and went to Oklahoma where she was arrested on a warrant for her arrest. Stotts had not asked her Intensive Supervision Officer (ISO) for permission to leave Kansas.

Stotts' ISO, Amber Harkey, submitted a statement to the district court recommending the court revoke Stotts' probation based on Stotts' (1) failure to timely attend S.B. 123 treatment as required, (2) subsequent unsuccessful discharge from S.B. 123 mental health treatment, (3) multiple failures to follow recommendations by ISO and providers for mental health treatment, (4) continued use of methamphetamine, (5) failure to use resources available to secure a stable living situation, (6) failure to attempt to obtain valid employment, (7) failure to report to ISO as directed for roughly six months; (8) two methamphetamine positive urinalysis tests, (9) failure to comply with increased reporting and a demonstrated unwillingness to comply with supervision, and (10) failure to remain in the area her ISO specified by traveling to, and being incarcerated in, Oklahoma.

At the probation revocation hearing, Harkey testified about the probation violations listed above. Harkey also stated that in 2019 Stotts only sporadically attended scheduled meetings, refused to allow Harkey to apply for suitable housing, and failed to respond or show after Harkey sent a reporting instructions letter to Stotts' last-known address. Based on Harkey's policy and being unable to reach or find Stotts for six months, she considered Stotts an "absconder."

4

Stotts testified that she suffered from drug addiction and acknowledged Harkey's attempt to work with her to abide by her probation conditions. She asked the district court to let her attend another inpatient treatment program on a reservation in Oklahoma. Stotts' attorney asked the district court to either place Stotts in an inpatient treatment program followed by ankle monitoring or impose a 180-day intermediate sanction.

The district court instead revoked Stotts' probation and ordered her to serve her underlying sentence, finding Stotts was an absconder. The district court revoked Stotts' probation in this case and in her 2019 felony case and ordered her 11-month sentence to run concurrent with her 32-month sentence in the 2019 case. As of June 23, 2020, the date of revocation, Stotts had served roughly 328 days of her 11-month sentence.

Stotts appeals, arguing the district court relied on an incorrect legal standard when it found her to be an absconder. She asks us to remand with orders to reconsider the disposition of her probation violations. Although she did not timely file her appeal, we consider her appeal timely under Kansas Supreme Court Administrative Order 2020-PR-016, effective March 18, 2020, which suspended filing deadlines because of the COVID-19 global pandemic.

*Is This Appeal Moot?*

The State argues the appeal is moot because Stotts has already completed her sentence and cannot be reinstated to probation. On July 30, 2021, the State filed a Notice of Change in Custodial Status for Stotts, showing she is no longer serving her sentence in this case and that any statutorily required postrelease supervision would begin once she served the rest of her 2019 felony sentence.

Generally, this court reviews only actual controversies and will not issue advisory opinions on moot claims. *State v. Roat*, 311 Kan. 581, 590, 466 P.3d 439 (2020). An

issue is moot when "'it is clearly and convincingly shown the actual controversy has ended, the only judgment that could be entered would be ineffectual for any purpose, and it would not impact the parties' rights.'" 311 Kan. at 584 (quoting *State v. Montgomery*, 295 Kan. 837, 840-41, 286 P.3d 866 [2012]). This doctrine is a judicial policy applied to best serve the interests of judicial economy.

The party claiming mootness must prove a prima facie case by showing the defendant "has fully completed the terms and conditions of his or her sentence." *Roat*, 311 Kan. at 593. Once the claimant meets its burden, the opposing party must show that dismissal would impair the defendant's substantial interests or that an exception prevents dismissal. 311 Kan. at 592-93.

In compliance with Supreme Court Rule 2.042 (2021 Kan. S. Ct. R. 18), on July 30, 2021, the State filed a Notice of Change in Custodial Status asserting that Stotts had completed her sentence in this case. In support, the State attached a letter from the Manager of the Kansas Department of Corrections' Sentence Computation Unit, confirming that Stotts had served the prison portion of her sentence, although she remained imprisoned for her sentence on another case.

Although this letter may not be as reliable as the certification provided in *State v. Castle*, 59 Kan. App. 2d 39, 477 P.3d 266 (2020), it is still

"reliable enough to meet the State's prima facie case and to shift to the defendant the burden to show that despite the letter he has not fully completed the terms of his sentence, that his substantial interest would be impaired by dismissal, or that an exception to the mootness doctrine applies." *State v. Harmon*, No. 122,153, 2021 WL 936070, at *3 (Kan. App. 2021) (unpublished opinion).

6

See *State v. Griffin*, No. 123,055, 2021 WL 4127829, at *4 (Kan. App. 2021) (unpublished opinion). Thus, the State has made a prima facie case of mootness and the burden shifts to Stotts.

Stotts chose not to reply to the State's argument that her appeal is moot. Yet it is the defendant's burden to show "the existence of a meaningful interest that would be impaired by dismissal." *Roat*, 311 Kan. at 593. See also *State v. Mayes*, 311 Kan. 615, 617, 465 P.3d 1141 (2020) ("Without a challenge from Mayes, the panel has nothing to consider.").

True, Stotts is still "'under a sentence'" in this case because she has not yet served her postrelease supervision. *State v. Lehman*, 308 Kan. 1089, 1098, 427 P.3d 840 (2018). But the fact that Stotts must serve postrelease supervision does not keep her appeal of her probation revocation from being moot because whether a defendant is on probation or imprisoned does not affect the mandatory term of postrelease supervision. Cf. *Castle*, 59 Kan. App. 2d at 48 (making same analysis about criminal history score).

And this court cannot grant Stotts any meaningful relief. Even if this court found error, this court cannot remand with instructions to impose an intermediate sanction because the district court cannot reinstate her probation or order Stotts to serve any more time on this case. See *State v. Kinder*, 307 Kan. 237, 243-44, 408 P.3d 114 (2018) (once the defendant serves his or her sentence, the district court cannot later sentence the defendant to probation). The district court no longer has any authority to punish her in this case. See *Montgomery*, 295 Kan. at 844.

Because Stotts has completed her sentence and does not argue that an exception to the mootness doctrine preserves her claim for appellate review or that dismissal would impair her substantial interest, we dismiss her appeal as moot.

7

Appeal dismissed.